UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| JODY S.,[1]<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br><br>    Defendant. | Case No. 21-cv-01677-RMI<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 30, 33 |

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying his application for disability insurance benefits under Title II of the Social Security Act. *See* Admin. Rec. at 25-36.[2] Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council (*see id*. at 8-10), thus, the ALJ's decision is the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both Parties have consented to the jurisdiction of a magistrate judge (dkts. 9 & 10), and both parties have moved for summary judgment (dkts. 30 & 33). For the reasons stated below, Plaintiff's amended motion for summary judgment is granted, and Defendant's motion is denied.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which is independently paginated, has been filed in seventeen attachments to Docket Entry #18. *See* (dkts. 18-1 through 18-13).

1  aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal
2  error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase
3  "substantial evidence" appears throughout administrative law and directs courts in their review of
4  factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).
5  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as
6  adequate to support a conclusion." *Id*. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S.
7  197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In
8  determining whether the Commissioner's findings are supported by substantial evidence," a
9  district court must review the administrative record as a whole, considering "both the evidence
10 that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v.
11 Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where
12 evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676,
13 679 (9th Cir. 2005).

## PROCEDURAL HISTORY

In December of 2017, Plaintiff filed an application for Title II benefits alleging an onset date of April 2, 2015. AR at 25. On October 25, 2019, an ALJ entered an unfavorable decision, finding Plaintiff not disabled. *See id*. at 25-36. In July of 2020, the Appeals Council denied Plaintiff's request for review. *Id*. at 8-10. A few months later, in March of 2021, Plaintiff sought review in this court (*see* Compl. (dkt. 1) at 1-2) and the instant case was initiated.

## SUMMARY OF THE RELEVANT EVIDENCE

Among the several claims raised by Plaintiff, is the claim that the ALJ erred at step two by failing to discuss or analyze a number of Plaintiff's mental and physical impairments, and further erred by failing to develop the record regarding those conditions. Accordingly, the following is a recitation of the evidence that is relevant to that claim.

*Plaintiff's Omitted Mental Impairments*:

In February of 2018, Plaintiff underwent an assessment by Paul Martin, Ph.D., due to having developed PTSD symptoms after having been stabbed in the neck by an unknown individual in an unprovoked incident. *See* AR at 445. Dr. Martin also noted the following

2

symptoms of depression: low energy, poor motivation, social withdrawal, sleep disturbance, crying spells, anhedonia, problems with memory and concentration, poor appetite with weight loss, irritability, poor frustration tolerance, feelings of hopelessness, and suicidal ideations. *Id*. at 445. Dr. Martin also noted several symptoms of anxiety disorder: feelings of nervousness, excessive worry, ruminating thoughts, gastrointestinal distress, muscle tension, and frequent headaches. *Id*. In the end, Dr. Martin diagnosed Plaintiff with (1) a learning disorder, (2) unspecified depressive disorder, (3) unspecified trauma and stressor related disorder, and (4) unspecified somatic symptom disorder. *Id*. at 447.

The following year, in March of 2019, Plaintiff was referred to Laura Jean Catlin, Psy.D., for an evaluation with regards to his cognitive abilities and his emotional health. *See id*. at 848-54. Plaintiff refused to cooperate and became hostile towards his attorney and Dr. Catlin –as Dr. Catlin put it, "[t]he claimant approached the examination in an uncooperative and hostile manner[,] [h]e was resistant to answering questions and was so uncooperative during the administration of the psychological testing [that] it was discontinued." *Id*. at 848. More specifically, Dr. Catlin reported that Plaintiff "became enraged at his attorney from Homeless Action Center for 'not telling me' and proceeded to call her [an expletive] several times under his breath[,] [and] [h]e became even more aggressive and resistant when asked to perform the first subtest of the WAIS-IV," which caused Dr. Catlin to discontinue all further psychological testing. *Id*. at 851. Plaintiff did manage to tell Dr. Catlin that he was unable "to read well enough to understand the questions," which may explain his frustration. *Id*. In the end, Dr. Catlin was unable to administer any of her intended diagnostic instruments (such as to gauge Plaintiff's IQ, or his neurocognitive status, or the nature and extent of his symptoms stemming from depression and PTSD). *See id*. at 848. Nevertheless, she assessed marked or extreme limitations in the 23 categories of mental functioning that she identified, as well as assessing that "the claimant's impairments will cause him to be absent from work for more than four days per month" while adding that "[a]t this time the claimant is unable to engage in any meaningful employment and would not be able to obtain or retain a job." *Id*. However, nowhere in Dr. Catlin's report does there appear to be an expression of a reasoned basis for these conclusions – other than, perhaps,

Plaintiff's behavior during the evaluation (which, of course, could lend itself to a range of interpretations).

*Plaintiff's Omitted Physical Impairments*:

On a number of occasions, doctors have assessed Plaintiff as suffering from degenerative changes in his cervical spine, his lumbar spine, and his hips. *See id*. at 241, 307, 308, 803, 844. There is also ample evidence of Plaintiff suffering from back and hip pain as a result of these conditions. *See id*. at 765, 770, 772, 776-77, 782, 790, 861, 866-67, 869-70, 872, 874-75, 883. One physician has diagnosed Plaintiff with lumbar radiculopathy and osteoarthritis. *Id*. at 452.

Neither were any of the above-mentioned mental and physical impairment evidence analyzed at step two or beyond, nor did the ALJ undertake any efforts to develop the record as to the limitations attending these conditions.

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five-step sequential evaluation process to determine whether the claimant is disabled (*id*. § 416.920; *see also id*. at § 404.1520). While the claimant bears the burden of proof at steps one through four (*see Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020)), "the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here, the ALJ appropriately set forth the applicable law regarding the required five-step sequential evaluation process. AR at 26-27.

At step one, the ALJ must determine if the claimant is presently engaged in "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), which is defined as work done for pay or profit and involving significant mental or physical activities. *See Ford*, 950 F.3d at 1148. Here, the ALJ determined Plaintiff had not performed substantial gainful activity since his alleged onset date. AR at 27-28. At step two, the ALJ decides whether the claimant's impairment or combination of

4

impairments is "severe" (*see* 20 C.F.R. § 404.1520(a)(4)(ii)), "meaning that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant will not be found to be disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe impairment: status post right knee surgery. AR at 29-31.

At step three, the ALJ is tasked with evaluating whether the claimant has an impairment or combination of impairments that meet or equal an impairment in the "Listing of Impairments." *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings describe impairments that are considered to be sufficiently severe to prevent any individual so afflicted from performing any gainful activity. *Id*. at § 404.1525(a). Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing." *Id*. at § 404.1525(c)(3). In order for a claimant to show that his or her impairment matches a listing, it must meet all of the specified medical criteria; and, an impairment that manifests only some of those criteria, no matter how severely, does not "meet" that listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If an impairment either meets the listed criteria, or if one or more impairments are determined to be medically equivalent to the severity of that set of criteria, that person is conclusively presumed to be disabled without a consideration of age, education, or work experience. *See* 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or equals the criteria or the severity of any of the listings. *See* AR at 31. If a claimant does not meet or equal a listing, the ALJ must formulate the claimant's residual functioning capacity ("RFC"), which is defined as the most that a person can still do despite the limitations associated with their impairments. *See* 20 C.F.R. § 404.1545(a)(1). Here, the ALJ determined that Plaintiff retained the ability to perform the full range of work at the medium exertional level. AR at 31-35.

Following the formulation of the RFC, the ALJ must determine – at step four – whether the claimant is able to perform his past relevant work, which is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *See* 20 C.F.R. § 404.1560(b)(1). If the ALJ

determines, based on the RFC, that the claimant can perform her past relevant work, the claimant will not be found disabled. *Id*. § 404.1520(f). Otherwise, at step five, the burden shifts to the agency to prove that the claimant can perform a significant number of other jobs that are available in the national economy. *See Ford*, 950 F.3d at 1149. To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly referred to as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2; or, alternatively, the ALJ may rely on the testimony of a vocational expert ("VE"). *Ford*, 950 F.3d at 1149 (citation omitted). A VE may offer expert opinion testimony in response to hypothetical questions about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy, or the demands of other jobs that may be available in the national economy. *See* 20 C.F.R. § 404.1560(b)(2). An ALJ may also use other resources for this purpose, such as the Dictionary of Occupational Titles ("DOT"). *Id*.

Here, based on the VE's testimony, the ALJ determined that – given the RFC for medium work – Plaintiff could perform his past relevant work as a carpenter. *See* AR at 35-36. Accordingly, the ALJ determined that Plaintiff had not been disabled at any time after April 2, 2015 (his alleged onset date). *Id*. at 36.

## DISCUSSION

The ALJ in this case erred at step two (and beyond) regarding the evaluation of Plaintiff's mental impairments and his spinal and hip impairments. The essence of that error is two-fold: first the ALJ failed to analyze the conditions at step two or beyond; and second, the ALJ failed to develop a proper record as to any of these conditions such that the record might reflect the nature and degree of their ensuing limitations.

The evaluation at step two is a *de minimis* test intended to weed out the most minor of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987); *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2005) (stating that the step two inquiry is a de minimis screening device to dispose of groundless claims) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)); *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (step-two is a "*de minimis* threshold"). An

impairment is non-severe at step two only if the evidence establishes a slight abnormality that has only a minimal effect on an individual's ability to work. *Smolen*, 80 F.3d at 1290. Here, the ALJ erred at step two by failing to even mention, let alone properly account for, Plaintiff's learning disorder, his depression, his anxiety, or his PTSD – all of which yielded a substantial list of symptoms that are strongly indicative of substantial ensuing limitations (e.g., Plaintiff's inability to read Dr. Catlin's test questions, his extremely low frustration tolerance – as evidenced during the abortive evaluation before Dr. Catlin – as well as his low energy, poor motivation, social withdrawal, sleep disturbance, crying spells, anhedonia, problems with memory and concentration, poor appetite with weight loss, irritability, poor frustration tolerance, feelings of hopelessness, suicidal ideations, feelings of nervousness, excessive worry, ruminating thoughts, gastrointestinal distress, muscle tension, and frequent headaches). The same is true for Plaintiff's degenerative disc disease of the cervical and lumbar spine and the hips. All of these conditions are clearly not the sort of groundless claims that step two is designed to weed out. As for the upshot of the ALJ's step two error, it cannot be argued that these errors were harmless because the record was so poorly developed that there is an unclear and ambiguous picture as to the extent of the limitations caused by these conditions. Accordingly, it is evident that these conditions were not properly accounted for at step three, during the formation of the RFC, or beyond. *See Berg v. Saul*, 831 F. App'x 849, 850 (9th Cir. 2020); *Urban v. Saul*, 808 F. App'x 453, 455 (9th Cir. 2020).

As for the ALJ's failure to develop the record regarding these impairments, the court will note that the ALJ has a special duty to fairly develop the record such as to assure that the claimant's interests are considered. *See generally Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). This duty is incumbent on the ALJ even when the claimant is represented by counsel. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). An ALJ's duty to engage in further record development is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence – as is the case here. *Id*. (citing *Tonapetyan*, 242 F.3d at 1150). Where the duty arises, the ALJ may discharge it "in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of

the record." *Id*.

Furthermore, when a claimant appears to be mentally ill – as is the case here – the ALJ's duty to develop the record is "heightened." *Tonapetyan*, 242 F.3d at 1150. "Indeed, the governing statute provides that, 'in any case where there is evidence which indicates the existence of a mental impairment, [a determination that the claimant is not disabled] shall be made only if [the ALJ] has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has [properly] completed the medical portion of the case review and any applicable residual functional capacity assessment.'" *Perkins v. Astrue*, No. SA CV 08-993 PJW, 2009 U.S. Dist. LEXIS 119528, 2009 WL 5066762 at *2 (C.D. Cal. Dec. 22, 2009) (quoting 42 U.S.C. § 421(h)); *see also DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991) ("In cases of mental impairments, this duty [to develop the record] is especially important."). This obligation is incumbent on the ALJ even if the claimant is represented by an attorney. *See Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003); *Barker v. Astrue*, No CV 05-5766 JC, 2009 U.S. Dist. LEXIS 40145, 2009 WL 1334366 at *4 (C.D. Cal. May 11, 2009) (collecting cases).

Here, the ALJ independently failed to note that Plaintiff had become so agitated during Dr. Catlin's attempted evaluation that no IQ or neurocognitive testing (nor any testing regarding Plaintiff's depression or trauma) could be administered – despite a clear diagnosis of learning disability and Plaintiff's admitted inability to read. Because the ALJ possessed evidence of Plaintiff's potentially significant mental illnesses, the agency's duty to develop the record properly (which the ALJ failed to discharge) was heightened even more. *Tonapetyan*, 242 F.3d at 1150. In short, the court concludes that the ALJ doubly erred by his unreasonable application of the *de minimis* step two standard and his failure to develop the medical record such as to clearly and fairly reflect the limitations associated with Plaintiff's learning disability; his depression; his anxiety; his PTSD; his degenerative disc disease of the cervical spine, lumbar spine, and hips; his lumbar radiculopathy; and, his osteoarthritis.

On remand, the ALJ is **ORDERED** to convene another hearing at which the court expects Plaintiff to be questioned at length regarding the limitations he experiences as a result of *each* of these impairments. The ALJ is **FURTHER ORDERED** to either send Plaintiff back to Dr. Catlin

(such that she can administer the diagnostic instruments that were unable to be administered due to Plaintiff's uncooperativeness, his hostility, and his aggression), or to arrange for another consultative examination where the same diagnostic instruments will be administered (particularly the WAIS-IV IQ test) such that the record can clearly reflect an examiner's opinion as to the limitations caused by Plaintiff's cognitive and emotional impairments. The ALJ is also **ORDERED** to contact Plaintiff's treatment providers (regarding the physical impairments discussed herein) such as to secure their detailed opinions regarding the limitations occasioned by those conditions.

The court declines to reach Plaintiff's other claims for a number of reasons. First, because it appears likely that the nature of those claims will substantially change on remand. Second, because the case is already being remanded for further proceedings on the ground that the ALJ erred at step two and did not properly develop the record, the court finds it unnecessary to address Plaintiff's remaining issues as they can adequately be addressed on remand, and any rulings here will not secure for Plaintiff any relief beyond what has already been granted. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."). As for Plaintiff's request for a remand for calculation and payment of benefits – that request is **DENIED** as the court finds that the record is not fully developed and that further administrative proceedings are indeed necessary. Specifically, in this regard, Plaintiff asserts – *inter alia* – that when Dr. Catlin's assessment that Plaintiff would miss at least four days per month (AR at 853) is viewed in conjunction with the VE's statement that such an individual would be categorically unemployable (*id*. at 55), then a disability finding must follow. *See* Pl.'s Amend. Mot. (dkt. 30) at 30. However, because Plaintiff refused to cooperate with Dr. Catlin's evaluation, the court is unable to identify the bases for Dr. Catlin's assessment of marked limitations in various categories of mental functioning or a basis for her conclusion that Plaintiff would be absent from work due to his mental impairments with the frequency she identified. Accordingly, the court finds that the record is underdeveloped and that further administrative proceedings (in the nature described above) are necessary.

In any event, as to Plaintiff's other claims, on remand, the Commissioner is **ORDERED** to consider the other issues raised in Plaintiff's briefing and to modify any ensuing ALJ opinion such as to reflect the fact that all the issues raised in this case by Plaintiff have been considered and addressed. *See Cortes v. Colvin*, No. 2:15-cv-02277-GJS, 2016 U.S. Dist. LEXIS 40580, 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016); *Cochran v. Berryhill*, No. 3:17-cv-00334-SB, 2017 U.S. Dist. LEXIS 212380, at *21 (D. Or. Dec. 28, 2017); *Steven M. v. Saul*, No. 19-cv-06991-RMI, 2021 U.S. Dist. LEXIS 52225, at *16-17 (N.D. Cal. Mar. 19, 2021).

## CONCLUSION

Accordingly, Plaintiff's Amended Motion for Summary Judgment (dkt. 30) is **GRANTED**, Defendant's Cross-Motion (dkt. 33) is **DENIED**, and the case is remanded for further proceedings consistent with the findings and conclusions set forth herein.

**IT IS SO ORDERED.**

Dated: September 29, 2022

ROBERT M. ILLMAN
United States Magistrate Judge